# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND TATE,<br><br>      Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant. | Case No. CV 15-9323 FMO (JPRx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

### INTRODUCTION

On April 4, 2018, Raymond Tate ("plaintiff"), who at the time was proceeding pro se, filed the operative Second Amended Complaint ("SAC") against the United States ("defendant") under the Federal Torts Claims Act ("FTCA"), asserting negligence claims arising from an assault by another inmate while plaintiff was housed at the United States Penitentiary in Victorville, California ("USP Victorville"). (See Dkt. 120, SAC at p. 6-7); (Dkt. 180, Report and Recommendation [] ("R & R") at 7-8).

On December 11, 2018, the Magistrate Judge recommended granting in part and denying in part defendant's motion to dismiss, or in the alternative, for summary judgment, and denying plaintiff's cross-motion for summary judgment. (See Dkt. 180, R & R at 50). In particular, the Magistrate Judge recommended denying defendant's motion as to plaintiff's FTCA claim based on an inattentive-guard theory. (See id. at 51). The Magistrate Judge found that plaintiff had

"demonstrated the existence of a genuine dispute of material fact as to whether the [FTCA's] discretionary-function exception applies to [plaintiff's] inattentive-guard claim, and Defendant has not met its burden of showing that it does." (Id. at 35).

The court accepted the Magistrate Judge's findings and recommendations.[1] (See Dkt. 209, Court's Order of August 28, 2019, at 15). Subsequently, a bench trial was held on plaintiff's inattentive-guard claim under the FTCA. (See Dkt. 327, Pretrial Conference Order ("PTO") at ¶ 7.a.). Having reviewed and considered all the evidence presented during the bench trial, and the contentions and arguments of counsel, the court hereby makes the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.[2]

## FINDINGS OF FACT

1. Plaintiff was housed at USP Victorville, a federal prison in Victorville, California, from June 30, 2014, through at least March 25, 2015. (Dkt. 327, PTO at ¶¶ 5.a., 5.b., 5.c.).

2. On March 25, 2015, plaintiff and inmate, Bilial Shabazz ("Shabazz"), were assigned to cell number 119 in Housing Unit 5A ("Unit 5A") at USP Victorville. (Dkt. 327, PTO at ¶ 5.d.). There were 121 inmates assigned to Unit 5A on that date. (Id. at ¶ 5.e.).

3. At approximately 8:00 a.m., on March 25, 2015, plaintiff left Unit 5A to report to his job assignment. (Dkt. 327, PTO at ¶ 5.f.). At approximately 11:00 a.m., plaintiff returned to Unit 5A from his job assignment. (Dkt. 329, Plaintiff Raymond Tate's Supplemental Witness Declaration ("Tate Supp. Decl.") at ¶ 39); (Dkt. 340, Reporter's Transcript of Bench Trial Proceedings ("RT") at 113:12-17).

4. Plaintiff testified that upon his return to Unit 5A, he passed by the unit office and saw Officer Nicole Batz ("Batz") on the computer. (See Dkt. 329, Tate Supp. Dec. at ¶¶ 61-62); (Dkt. 340, RT at 118:15-20). Plaintiff did not remember what he saw on the computer screen and did

---

[1] On November 1, 2019, the court dismissed plaintiff's Eight Amendment claims against individual defendant Captain Robert Hodak. (See Dkt. 220, Court's Order of November 1, 2019): (Dkt. 213, Report and Recommendation []).

[2] Any finding of fact that more correctly constitutes a conclusion of law, and any conclusion of law that more correctly constitutes a finding of fact, should be treated as such.

not know whether Batz was looking at a Bureau of Prisons ("BOP") website. (See Dkt. 327, PTO at ¶¶ 5.s., 6.o.); (Dkt. 340, RT at 117-18).

5. Batz was authorized to use the computer in the office while on duty in Unit 5A. (Dkt. 327, PTO at ¶ 5.r.). Correctional officers at USP Victorville used the computer for logging time entries, drafting incident reports, and other duties. (See Dkt. 340, RT at 39).

6. Batz credibly testified that on March 25, 2015, she conducted rounds and cell searches in the morning, recorded her activities on the office computer, and spent the majority of the day out of the office. (See Dkt. 340, RT at 60, 63-65, 153 & 157-59); (see also Dkt. 290, Trial Declaration of Nicole Batz ("Batz Decl.") at ¶¶ 9-10).[3]

7. At approximately 11:50 a.m., Batz, who was the only correctional officer assigned to Unit 5A at that time, released the inmates in Unit 5A to go to the dining hall. (See Dkt. 327, PTO at ¶¶ 5.g., 5.i.); (Dkt. 290, Batz Decl. at ¶ 6).

8. Before entering or exiting Unit 5A, inmates walk through a "Sallyport" with a metal detector. (Dkt. 327, PTO at ¶ 5.j.).

9. Batz stood next to and monitored the metal detector at the Sallyport as inmates exited the unit on their way to the dining hall. (See Dkt. 327, PTO at ¶ 5.i.); (Dkt. 290, Batz Decl. at ¶¶ 12-13.)

10. When plaintiff was halfway through the metal detector, Shabazz, his cellmate, quickly approached plaintiff from behind and "struck [him] in a stabbing motion[.]"[4] (Dkt. 327, PTO at ¶ 5.k.); (see Dkt. 340, RT at 56-57, 120-21); (Dkt. 290, Batz Decl. at ¶ 14); (Dkt. 295, Plaintiff Raymond Tate's Witness Declaration ("Tate Decl.") at ¶ 92).

11. Batz was standing about five feet away when Shabazz assaulted plaintiff. (Dkt. 290, Batz Decl. at ¶ 13); (Dkt. 340, RT at 61). When the assault began, Batz yelled "[s]top! That's

---

[3] In response to plaintiff's Motion to Exclude Evidence (Dkt. 313), the court excluded several of the government's exhibits and struck portions of the trial declarations filed by Batz and Michael Quijada. (See Dkt. 326, Court's Order of November 8, 2021, at 3-4). The court does not rely on that excluded evidence in this Order.

[4] The weapon Shabazz used during the assault was never recovered. (Dkt. 327, PTO at ¶ 6.d.).

assault" and called for backup.  (Dkt. 290, Batz Decl. at ¶ 15); (Dkt. 340, RT at 61, 74, 121-22).

12. Batz was unaware of any suspected or threatened assault involving plaintiff or Shabazz prior to the incident.  (Dkt. 340, RT at 80).

13. As a result of the assault, plaintiff suffered three puncture wounds on his back and one puncture wound on his shoulder.  (Dkt. 295, Tate Decl. at ¶ 111).  A physician assistant at the prison provided plaintiff with medical care after the assault.  (Dkt. 327, PTO at 5.m.).

## CONCLUSIONS OF LAW

14. The FTCA waives the United States's sovereign immunity for claims seeking money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see Whisnant v. United States, 400 F.3d 1177, 1180 (9th Cir. 2005) ("The FTCA confers subject matter jurisdiction on the federal district courts to hear tort actions against the federal government for negligence of its employees under circumstances in which the United States, if it were a private party, would be liable under the law of the place where the tortious act or omission occurred.").

15. Despite the FTCA's broad waiver of sovereign immunity, a claim may be barred by the discretionary function exception, which provides that the FTCA shall not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  The government bears the burden of establishing that the exception applies.  Nanouk v. United States, 974 F.3d 941, 944 (9th Cir. 2020).

16. To determine whether the discretionary function exception applies, the court employs a two-step test. Nanouk, 974 F.3d at 944.  "Under the first step, [the court] ask[s] whether the act or omission on which the plaintiff's claim is based was discretionary in nature – that is, whether it 'involve[d] an element of judgment or choice.'" Id. at 944-45 (quoting Berkovitz v. United States,

486 U.S. 531, 536, 108 S.Ct. 1954, 1958 (1988)). "If the act did not involve an element of judgment or choice, the analysis ends there and the plaintiff's claim may proceed." Id. at 945 (emphasis omitted).

17. "If the [government] employee's conduct involved an element of judgment or choice, [the court] turn[s] to the second step of the analysis, which asks whether the discretionary decision challenged by the plaintiff 'is of the kind that the discretionary function exception was designed to shield.'" Nanouk, 974 F.3d at 945 (quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958). Because "Congress sought to preclude courts from second guessing discretionary judgments grounded in social, economic, and political policy[,]" the government will "prevail[] at step two if it can show that the decision challenged by the plaintiff is susceptible to policy analysis." Id. (internal quotation marks omitted).

18. Before applying the two-step test, the court "must identify which specific actions or omissions the plaintiff alleges were negligent or wrongful." Nanouk, 974 F.3d at 945. Here, plaintiff's claim is based on his contention that Batz was "negligent [in] monitoring [] prisoners" at USP Victorville because she "failed to remain alert and attentive while on duty, thereby allowing another inmate to lie in wait armed and undetected, and brutally assault Plaintiff as he exited the housing unit." (Dkt. 327, PTO at ¶ 7.c.); (see Dkt. 347, Plaintiff['s] Post Trial Memorandum of Points and Authorities [] ("Plf. Memo.") at 1-2) ("Office[r] Nicole Batz, the sole unit officer on duty, failed to remain alert and attentive during her shift on March 25, 2015, which allowed another inmate to procure a weapon and carry out a pre-meditated attack on Plaintiff, all without being detected.").

19. As to the first step of the analysis, the court concludes that "the challenged conduct was discretionary in nature." Nanouk, 974 F.3d at 946. An employee lacks discretion "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958. Here, plaintiff did not identify a controlling statute, regulation, or policy that specifically prescribes how correctional officers shall monitor

prisoners during duty hours.[5] (See, generally, Dkt. 347, Plf. Memo.).

20. Turning to the second step, courts have recognized an inattentive or negligent guard theory of liability under the FTCA where the plaintiff alleges "negligence unrelated to any plausible policy objectives." Coulthurst v. United States, 214 F.3d 106, 111 (2d Cir. 2000); see, e.g., Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006) ("The negligent guard theory is a theory of liability under the FTCA over which the district court clearly has subject matter jurisdiction."); Palay v. United States, 349 F.3d 418, 432 (7th Cir. 2003) ("[I]t is easy to imagine a scenario in which [Metropolitan Community Correctional Center] officials behaved in a negligent fashion, but without making the types of discretionary judgments that the statutory exception was intended to exempt from liability."); Middleton v. United States Fed. Bureau of Prisons, 658 F.Appx. 167, 171 (3d Cir. 2016) (noting decisions by the Second, Fourth, and Seventh Circuits); Padilla v. United States, 2012 WL 12882367, *6 (C.D. Cal. 2012) (recognizing negligent guard theory). For example, in Palay, where the plaintiff alleged that negligence by BOP employees caused him to be injured as a result of a gang fight, the court observed that if the correctional officer monitoring the unit "at the time that the gang altercation broke out was simply asleep, . . . [t]hat type of carelessness would not be covered by the discretionary function exception, as it involves no element of choice or judgment grounded in public policy considerations." 349 F.3d at 432; see Keller v. United States, 771 F.3d 1021, 1025 (7th Cir. 2014) (same). Similarly, in Coulthurst, where the plaintiff was injured by faulty equipment in the prison gym, the court explained that "[a]n inspector's decision (motivated simply by laziness) to take a smoke break rather than inspect the machines [in the prison gym], or an absent-minded or lazy failure to notify the appropriate authorities upon noticing the damaged cable, are examples of negligence . . . that

---

[5] Plaintiff pointed to BOP policies requiring that correctional officers be responsible for supervising inmates, "remain fully alert and attentive during duty hours[,]" and ensure "that inmates do not have any authority over other inmates[,]" (see, e.g., Dkt. 327, PTO at ¶¶ 6.i., 6.j., 6.k.); (Dkt. 347, Plf. Memo. at 4-6), but none of those policies prescribe a specific course of action. See Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958; see, e.g., Calderon v. United States, 123 F.3d 947, 949 (7th Cir. 1997) ("[N]one of the federal regulations cited [by the plaintiff] set forth a mandatory, non-discretionary disciplinary action which the BOP was required to take against Perez prior to his attack on Calderon.").

do not involve considerations of public policy." 214 F.3d at 111 (internal quotation marks omitted). Actions such as these where a BOP employee abdicates his or her duties "do not reflect the kind of considered judgment grounded in social, economic, and political policy which the [discretionary function exception] is intended to shield from judicial second-guessing." Id. (internal quotation marks omitted); see Palay, 349 F.3d at 432 (explaining that there are instances of "carelessness" not covered by the discretionary function exception because the challenged conduct "involves no element of choice or judgment grounded in public policy considerations").

21. Here, plaintiff's inattentive-guard claim rests on allegations that there was a "complete abrogation of duties" by Batz. (Dkt. 347, Plf. Memo. at 4); (see, e.g., id. at 2) ("Officer Batz abrogated her express duties to remain alert and attentive, and instead merely sat in her office, not paying attention to the housing unit, and goofing around on her computer looking at Internet content. Had Office[r] Batz remained alert and attentive during her shift, this violent attack would not have occurred."); (Dkt. 327, PTO at ¶ 7.c.) (same).

22. Contrary to plaintiff's assertions, the evidence shows that Batz did not abdicate her duties either before or during Shabazz's attack on March 25, 2015. In the morning, Batz conducted rounds and cell searches, and recorded her activities on the office computer. (See Dkt. 340, RT at 60, 63-65, 153, & 157-58). At around 11:50 a.m. when Shabazz attacked plaintiff, Batz was monitoring the Sallyport and immediately responded to the assault. (See Dkt. 290, Batz Decl. at ¶ 15); (Dkt. 340, RT at 61, 74, 121-22).

23. In short, because there was no policy "prescrib[ing] a course of action for [Batz] to follow[,]" see Nanouk, 974 F.3d at 946, and Batz's conduct on March 25, 2015, involved "the kind [of discretionary decision] that the discretionary function exception was designed to shield[,]" id. at 945, the court finds that, under the factual circumstances of this case, the discretionary function exception precludes plaintiff's FTCA claim. See, e.g., Calderon, 123 F.3d at 951 (concluding that "the actions of the BOP involved discretion grounded in public policy considerations" with respect to its decision not to discipline an inmate who later assaulted the plaintiff).

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT plaintiff's action is dismissed with

1  prejudice.  Judgment shall be entered accordingly.

2  Dated this 1st day of March, 2023.

                                                                             /s/
                                        Fernando M. Olguin
                                United States District Judge